## Holland v. Commonwealth.

(Decided January 12, 1932.)

814

CROSSLAND & CROSSLAND for appellant.

J. W. CAMMACK, Attorney General, and SAM B. KIRBY, JR., Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

Robert L. Holland appeals from a judgment convicting him of bank robbery, and fixing his punishment at twenty years' imprisonment.

The facts are these: A few minutes past noon on December 31, 1930, several men, armed and unmasked, entered the People's National Bank of Paducah. In addition to two customers, there were in the bank at the time W. A. Blackburn, the president, W. A. Cochran, the vice president, M. O. De Jarnett, assistant cashier, Hugh Brent, bookkeeper, and Helen Thompson, stenographer. One of the robbers walked into the cage where the assistant cashier was, pointed a .45 automatic pistol at him, and said, "Stick 'em up." A similar order was given by one of the other robbers to W. A. Blackburn, the president, but Blackburn dodged behind the counter. The officers and employees of the bank were then made to get down on their hands and knees with their faces to the wall. After gathering up the money from the cages, they compelled one of the officers to open the vault. After taking a quantity of money from the vault, the robbers put the officers and employees in the vault, closed the door, and disappeared. All told, they took from the bank $26,160.05. Later on, Vice President Yeiser appeared and released the officers and employees from the vault. On January 13, 1931, appellant was arrested in Mobile, Ala., in a liquor raid made on his quarters in a hotel or rooming house. In a suitcase, which appellant had, and claimed to own, were found two .45 automatic pistols and a sugar sack containing about $3,500 in cur-

rency. Some of this currency had just been received by the bank from the Treasury Department at Washington, and bore the bank's name under the signatures of its officers and the serial numbers of the bank. The money was also put up in packages and bore the bank labels, showing the date it was put up. Not only did the officers and employees of the bank identify a portion of the money as that taken from the bank, but they positively identified appellant as the leader of the men who robbed the bank. In addition to this, there was introduced in evidence a written confession signed by appellant stating that he, Beverly Stegall, and three others robbed the bank of $26,000, and that the money was later divided among them. It was also stated in the confession that the statement was voluntary, and was made without any promise of immunity, or any coercion upon the part of any one whatever, and with full knowledge of appellant's constitutional rights.

A new trial was sought on the ground that the court erred in refusing a continuance, and in compelling appellant to go into trial without appointing an attorney to represent him, and further that the court erred in permitting the written confession to go to the jury, it being claimed that it was obtained under a promise that it was not to be used against appellant, but was to be used only against Stegall. After hearing oral evidence for and against the motion for a new trial, the motion was denied.

The grounds for a new trial are so closely connected that they will have to be considered together. The record discloses the following facts: On April 14, 1931, the warden of the penitentiary at Eddyville was ordered to deliver appellant to the jailer of McCracken county, to be safely kept until his trial on April 21, 1931, or until the further order of the court. On April 15, appellant was brought into court in the custody of the jailer, and being informed of the nature of the indictment against him. and that the prosecution was set for trial on April 21, 1931, he informed the court that he understood the facts as to the said indictment, and the setting of the case for trial, and that he had employed an attorney to defend him on the trial and would be ready for trial. On April 21, the commonwealth appeared by attorney and announced ready for trial, and appellant appeared in court and moved the court for a continuance. The motion was overruled, and appellant excepted to the ruling. Thereupon

a jury was impaneled, the members of which were legally tested and tried. Appellant was then formally arraigned, acknowledged his identity, and entered a plea of "not guilty." The commonwealth introduced several witnesses, who were cross-examined by appellant. Appellant interposed no objection to the introduction of his confession. At the conclusion of the evidence for the commonwealth appellant declined to offer any testimony. Thereupon the court gave to the jury certain instructions to which both parties objected and excepted. The case was then argued by appellant on his own behalf, and by the commonwealth's attorney on behalf of the commonwealth. After retiring to their room for deliberation in custody of the deputy sheriff, who was duly sworn, the jury returned the verdict finding appellant guilty as charged, and fixing his punishment as above stated.

Thus it will be seen that, when appellant was brought into court on April 15th, he informed the court that he understood the facts as to the indictment and setting the case for trial, and that he had employed an attorney to defend him on the trial, and would be ready for trial. The order does not show who the attorney was that appellant stated he had employed, or where he lived. When the case was called for trial on April 21, 1931, all that the record shows is that appellant moved for a continuance, and that the motion was overruled, to which ruling of the court appellant excepted. No written motion for a continuance was filed, and the record does not disclose that the oral motion was based on the absence of counsel. All that we have is appellant's affidavit in support of his motion and grounds for a new trial to the effect that he entered a motion for a continuance of the case, or to have the case reset for a future date, on account of the absence of his attorney, T. J. Walsh, of Memphis, Tenn., whom he had employed to represent him, and that if the case were continued or reset he could and would procure the attendance of said attorney on his trial. Even if this affidavit may be accepted as a correct statement of what occurred, it is not claimed that there was any showing by appellant that he had communicated with Walsh by letter, telegraph, telephone or messenger, or that he had received from Walsh a letter or message of any kind stating that he would accept employment, and would be on hand if the case were continued. In the circumstances the court had

the right to disregard appellant's unsupported statement, even if it was made, and conclude that the alleged absence of Walsh, even if there was an attorney of that name living in Memphis, was a mere subterfuge to obtain a continuance. We therefore conclude that, even if it be true that the continuance was asked on the ground that T. J. Walsh was not present, but his presence could be obtained, the court did not err in refusing the continuance.

But the point is made that the court erred in not appointing counsel to defend appellant. The argument is that, if he had had counsel, the cross-examination of the commonwealth's witnesses would have been more effective, an objection would have been made to the introduction of the confession, perhaps a more favorable jury would have been selected, and that his rights generally would have been better protected. It is further argued that appellant did not ask for counsel, or object to the confession, or ask instructions as to the effect of the confession because he was ignorant of his rights. Although it is true that the Constitution guarantees to the accused in all criminal prosecutions the right to be heard by himself and counsel, it is not the duty of the court to assign counsel to the accused unless he requests it, and shows that he is financially unable to employ counsel, or lacks sufficient mental capacity to conduct the defense, or to understand its nature. Grogan v. Commonwealth, 222 Ky. 484, 1 S. W. (2d) 779. The record does not disclose what occurred when appellant undertook to conduct his own defense. For aught that appears, he may have stated that he did not desire counsel. At any rate, he elected to conduct his own defense. Doubtless it is true that appellant's ability was not equal to that of a well-trained lawyer, but not only did he cross-examine the witnesses as to his own identity and the identity of the money taken from the bank, but he had sufficient intelligence and assurance to argue his own case to the jury, and there is no showing whatever that he was so mentally deficient or so ignorant of his rights as to require the interposition of the court in his behalf. In the absence of such a showing, or a request for counsel, we cannot say that the court erred in not appointing counsel. The case is simply one where the accused, being a man of at least average intelligence, as disclosed by the record, elected to conduct his own defense, and there-

fore will be held bound by his election. Furthermore, it is not possible to perceive how the jury could have reached a different verdict if appellant had employed, or the court had appointed, the best attorney in the state to defend him, and he had assisted in the selection of the jury, had subjected the witnesses to the severest cross-examination, and had succeeded in excluding the confession. Not only was appellant positively identified as one of the robbers by several persons in the bank at the time, but the money found in his possession at the time of his arrest was identified as a part of the money taken from the bank. Thus, without the aid of the confession, appellant's guilt was clearly and overwhelmingly established.

On the whole, we find in the record no error prejudicial to appellant's substantial rights.

Judgment affirmed.