## Harris v. Commonwealth.

(Decided June 9, 1933.)

MALCOLM P. WALLACE, W. F. McMURRY, Jr., and SAMUEL O. BATES for appellant.

BAILEY P. WOOTTON, Attorney General, and WILLIAM R. ATTKISSON, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Affirming.

Walter Harris has appealed from a judgment imposing upon him 15 years confinement in the penitentiary for robbing the People's National Bank of Paducah, Ky.

Other appeals growing out of this robbery have reached this court and we will refer to them in order to abbreviate this opinion. See Holland v. Com., 241 Ky.

813, 45 S. W. (2d) 476, and People's National Bank for use and benefit, etc., v. Marshall Jones et al., 249 Ky. 468, 61 S. W. (2d) 17. The indictment returned charged Walter Harris et al. with having done this robbery and with having done it pursuant to a conspiracy.

He relies for reversal upon the alleged errors which we shall discuss. At the conclusion of the evidence for the commonwealth he moved the court to require it to elect whether it would prosecute him for robbery or conspiracy to rob. The court properly overruled his motion as the indictment did not charge him with two crimes but with having committed one crime by two methods.

Three witnesses identified Harris as one of those they saw actively participating in the robbery, but the defendant produced evidence strongly demonstrating he was in Memphis, Tenn., at the time this robbery was committed. After the case had been submitted to the jury and after some time spent in deliberation, the jury came into open court and in the presence of the defendant, one of them, D. W. Judd, said this to the judge presiding: "We want to know how to write a verdict to find a defendant guilty of conspiracy." At this point the court interrupted the juror and told him in substance that he must not refer to the deliberations of the jury; that if they found the defendant guilty to so state in their verdict. Several members of the jury then stated, evidently directing their remarks to Judd: "We have already done that," and the said Judd thereupon handed to the presiding judge, Hon. Joe L. Price, the instructions on the back of which was written the following:

"We the jury, find the defendant, Walter Harris, guilty and fix his punishment at fifteen years in the penitentiary. One of the jury, D. W. Judd."

The court thereupon received the verdict and discharged the jury.

The defendant does not complain of this action as misconduct on the part of the jury or that he was prejudiced by what then occurred, but argues that this demonstrates the evidence for the commonwealth of the identification of Harris as actually physically present and actively participating in this robbery was utterly destroyed by the remarkable alibi which he

established and that the jury rested his conviction upon a belief on its part that this robbery was the result of a conspiracy to which he was a party and that he was thus constructively present and constructively a participant in the robbery. Hence, he says, the court erred first in overruling his motion for a directed verdict of acquittal and next in giving an instruction under which the jury might find him guilty if it should find he was not in Kentucky when the robbery took place but that he was a party to a conspiracy, and that other parties to it did the robbery.

He is wrong in both particulars. The commonwealth had the testimony of three residents of Paducah, that the defendant was there and helped do the crime which was enough to require that question of his guilt be submitted to the jury. There was no error in giving a conspiracy instruction, for the commonwealth had evidence that Robert Holland (a convicted participant in this robbery) was during December, 1930, living in a rooming house in Paducah conducted by a Mrs. Little; that after this robbery this room was searched and some shirts, underwear, etc., were found; that the laundry marks in some of them were ''W. H.'' and in others ''Walter Harris''; that the defendant had been in the Nashville penitentiary with Beverly Stegall and Robert Holland; that in November, 1930, the defendant went to Jackson, Miss., and got Holland whom he knew to have served time in Baton Rouge, and brought him to his Highland avenue farm about five miles from Memphis; that Stegall visited at the farm; that while Holland was there George Hughes, a colored man and an acquaintance of Holland's came to the farm and Harris engaged him to operate his still for him and to help sell the product; that Holland left after spending a fortnight or so with Harris and we next hear of him in Paducah at Mrs. Little's; that Holland from Paducah wrote to Sherdell Ballew who was then serving his second term in the penitentiary at Baton Rouge; that these letters were signed W. E. Harris, but were in the handwriting of Holland; that Holland sent Stegall and Hughes for Ballew; that Ballew got out on December 19th, and he, Hughes, and Stegall started for Paducah; that they came via Memphis; that Hughes, Ballew, Holland, and Stegall actively participated in this robbery; that about midnight and about 12 hours

after the robbery an automobile containing Holland and others stopped at the farm home of Harris, near Memphis, and Holland came in and gave Harris an oat-sack containing $1,200; that although his wife was in jail charged with shooting his father and defendant had been endeavoring to find a bondsman for her, yet he left her there about 10:30 o'clock, and went to his home five miles in the country which looks as though he expected to meet some one there; that although his father had died in a Memphis hospital about three hours or less before, the defendant was at home, and received Holland when he came; that about $600 of this money was in paper in bunches, and about $600 in coins wrapped in rolls like they do at the banks, and that the defendant admitted the $1,200 he got came out of this bank.

His final complaint is the court did not by a separate instruction define the word "conspiracy." In Slaven v. Com., 197 Ky. 790, 248 S. W. 214, we said it was proper to define the word "conspiracy," see, also, Alsept v. Com., 245 Ky. 741, 54 S. W. (2d) 337, and Hilger v. Com., 248 Ky. 576, 59 S. W. (2d) 533, but our attention is called to no case where we have reversed a judgment for failure to do so. There may be cases where the circumstances would require such a definition but this is not such a case. In the very outset of this case the indictment was read to the jury wherein it was charged that Walter Harris et al. did *confederate, conspire, combine and band themselves together,* and in pursuance of said *confederation, combination, conspiracy, and agreement,* etc., did this robbery, and in the instructions in apt language the jury was told that if they should from the evidence, to the exclusion of a reasonable doubt, believe they did *confederate, conspire, combine, and band themselves together* and that pursuant to that *confederation, combination, conspiracy, and agreement* if such there was, this robbery was done, to find the defendant guilty, etc. We have italicized these words and called attention to them to show how thoroughly the word "conspiracy" was defined not only in the instructions but also in the indictment so that it is not possible that the jury could have mistaken the meaning of the word "conspiracy." Compare Slaven v. Com., supra.

The judgment is affirmed.